IN THE CIRCUIT COURT OF KANAWHA COUNTY, WEST VIRGINIA

PAMELA DUNFORD,

    Plaintiff,

v.                                Civil Action No. 21-C-128

FOOT LOCKER RETAIL, INC.,
a foreign corporation,

    Defendant.

## COMPLAINT

AND NOW comes Plaintiff, Pamela Dunford, by counsel, and respectfully represents unto the Court as follows:

### Preliminary Statement

1. This is an action for money damages, injunctive relief and other equitable and legal relief, filed pursuant to the West Virginia Human Rights Act ("WVHRA") and the common law of the State of West Virginia, arising out of Plaintiff's employment relationship with Defendant Foot Locker Retail, Inc.

2. Plaintiff was employed by Defendant and alleges that she was wrongfully discharged in violation of the WVHRA's prohibition against age and sex discrimination. As a result of the acts of Defendant, Plaintiff has suffered lost wages and benefits, out-of-pocket losses, emotional and mental distress, humiliation, anxiety, embarrassment, depression, aggravation, annoyance, and inconvenience.

## Parties

3. Plaintiff Pamela Dunford is a citizen and resident of Kanawha County, West Virginia and is a member of a protected group under the WVHRA.

4. Defendant Foot Locker Retail, Inc. is a foreign corporation authorized to do business and doing business in Kanawha County, West Virginia.

5. Defendant is a "person" and "employer" pursuant to the WVHRA.

## Facts

6. Plaintiff began employment with Defendant on or about August 1, 1988, as a part-time manager trainee at its Washington, D.C. location.

7. She was promoted to store manager of a Lady Foot Locker in or around February 1989 at the Christiansburg, Virginia location.

8. In or around 1994, Plaintiff was transferred to the Lady Foot Locker store as the store manager at the Charleston, West Virginia location.

9. In or around 1999, Plaintiff became the general manager of the "triplex" which included Men's Foot Locker, Lady Foot Locker, and Kids Foot Locker at the Charleston, West Virginia location.

10. Shortly thereafter, Defendant closed the Kids Foot Locker store to remodel the store.

11. Plaintiff then moved to the store manager of only the Lady Foot Locker and another employee was the store manager of the Men's Foot Locker.

12. The Lady Foot Locker was closed, and Plaintiff was transferred to the Men's Foot Locker and shared the store manager position with another co-worker.

EXHIBIT A

13. That co-worker subsequently quit, and Plaintiff was the only store manager for the Men's Foot Locker store.

14. Thereafter, Defendant announced that it would be opening a House of Hoops store.

15. Plaintiff was made store manager for House of Hoops, which is a "double store" consisting of House of Hoops and Men's Foot Locker.

16. In or around 2016, the Kids Foot Locker store opened again.

17. The store manager at the Kids Foot Locker was a male in his twenties.

18. He wanted to be the manager at House of Hoops and Men's Foot Locker because it was a "better fit" for him as a man.

19. Therefore, in 2017, Defendant switched the jobs of Plaintiff and that young, male manager, moving Plaintiff from the store manager at House of Hoops and Men's Foot Locker to store manager position at Kids Foot Locker.

20. Plaintiff is 55 years old.

21. During her thirty-one years of employment with Defendant, she was promoted and received excellent reviews.

22. She performed her duties in a satisfactory manner.

23. As the store manager, she had many duties including, opening and closing the store, training and managing employees, performing all inventory procedures, stocking merchandise, preparing schedules for employees, preparing the visual merchandising/displays/windows, performing maintenance, and was required to interview potential employees weekly.

3

24. In or around August 2018, a new district manager was hired in her district, Matt Szeszak.

25. Mr. Szeszak made comments to Plaintiff, indicating that he liked to see new faces in his stores to "keep it fresh."

26. He seemed to favor younger, male employees and liked a high turnover of employees.

27. He threatened Plaintiff in a meeting saying that he could "promote you to customer" at any time and that he could always find a reason to fire any employee by going back and scrutinizing their schedules and clock ins.

28. In or around mid-July 2019, Mr. Szeszak asked Plaintiff when she planned to retire and told her that she was "one of the few employees left with a pension plan."

29. It was true that Plaintiff was one of the only employees with a traditional pension plan, since that retirement package had been phased out years before for new employees.

30. In fact, Plaintiff believes that she was likely one of the only active employees nationwide with that pension plan.

31. On or about July 31, 2019, Mr. Szeszak contacted Plaintiff and told her that he was coming to her store for a visit.

32. When he got there, he told Plaintiff that all of the other store managers in his district were willing to be promoted and moved up in the company to different areas of the country, but that he "can't say that about you [her]."

EXHIBIT A

33. Plaintiff told him that she had been a manager for thirty-one years, that she had done her time of moving around, and that she preferred to stay where she was or at least to stay in West Virginia.

34. Plaintiff also told Mr. Szeszak that if she had to move, she would like to move to another store in the mall.

35. Mr. Szeszak appeared angry and told Plaintiff that he had "many new assistant managers that want your [her] spot and could take it tomorrow!"

36. Plaintiff was very upset at that comment.

37. Mr. Szeszak slammed his notebook on the counter and told Plaintiff that he was "going to go watch film" and went to the back of the store.

38. By "watching film," Plaintiff understood that he was going to scrutinize the videos of when she opened and closed the store and compare it to her clock in times.

39. Later that same day, Plaintiff was terminated for being clocking in late and opening the store late on a few occasions in the preceding months.

40. Upon information and belief, Defendant hired a male employee in his twenties to replace Plaintiff as store manager.

41. Plaintiff believes that she was discharged due to her age and sex and that Defendant's proffered reason for firing her was pretextual.

42. Defendant's actions were willful, wanton, and/or carried out with reckless disregard for the rights of Plaintiff.

43. As a result of Defendant's actions, Plaintiff has suffered lost wages and benefits, out-of-pocket losses, emotional and mental distress, humiliation, anxiety, embarrassment, depression, aggravation, annoyance, and inconvenience.

5

EXHIBIT A

## Claims for Relief

### First Claim

### [Human Rights Act – Age and Sex Discrimination]

44. Plaintiff realleges and incorporates herein the allegations contained in the preceding paragraphs.

45. The above-described acts of Defendant constitute violations of the WVHRA, *W. Va. Code* § 5-11-1, *et seq.*, and the regulations promulgated pursuant thereto, by subjecting Plaintiff to unlawful age and sex discrimination.

46. As a result of the fact that Defendant's supervisory and management personnel engaged in, perpetrated, and otherwise condoned the above-described acts, Defendant is strictly liable for the age and sex discrimination.

47. As a result of Defendant's conduct, Plaintiff suffered compensatory damages – including, but not limited to, wage loss, emotional and mental distress, aggravation, humiliation, embarrassment, anxiety, annoyance and inconvenience.

### Second Claim

### [Punitive Damages]

48. Plaintiff realleges and incorporates herein the allegations contained in the preceding paragraphs.

49. The above-described acts of Defendant were willful, wanton, malicious and/or carried out with reckless disregard for the legal rights of Plaintiff, thereby justifying an award of punitive damages against Defendant.

### **PRAYER**

**WHEREFORE**, Plaintiff respectively prays for the following relief:

EXHIBIT A

1. That this Court enter a declaratory judgment, pursuant to *W. Va. Code* § 55-13-1, *et seq.*, declaring the acts of Defendant to be in violation of *W. Va. Code* § 5-11-1, *et seq.*;

2. That this Court enter a permanent injunction against Defendant ordering it to cease and desist from engaging in the unlawful acts described hereinabove;

3. That this Court enter a permanent injunction against Defendant ordering it to establish an on-going training program for its employees on the subject of unlawful employment discrimination in West Virginia;

4. That Plaintiff be awarded damages, as appropriate, in an amount to be determined at trial, that fairly and reasonably compensates her for her injuries as a result of Defendant's unlawful acts;

5. That Plaintiff be awarded additional damages, in an amount to be determined at trial, that fairly and reasonably compensates her for emotional and mental distress, aggravation, humiliation, embarrassment, anxiety, annoyance and inconvenience suffered as a result of Defendant's unlawful acts;

6. That Plaintiff be awarded punitive damages against Defendant, in an amount to be determined at trial, for the willful, wanton and/or reckless disregard for her legal rights;

7. That Plaintiff be awarded her costs, including a reasonable attorney's fee, pursuant to *W. Va. Code* § 5-11-1, *et seq.*, the common law, and the general authority of this Court;

8. That Plaintiff be awarded any and all additional damages in an amount to be determined at trial;

EXHIBIT A

9. That Plaintiff be awarded prejudgment and postjudgment interest as allowed by law, on all of the aforementioned damages; and

10. That Plaintiff be awarded such further and general relief as this Court may deem appropriate.

**A JURY TRIAL IS DEMANDED OF ALL ISSUES SO TRIABLE.**

                                                **PAMELA DUNFORD**
                                                Plaintiff
                                                By Counsel

*/s/ Kristina Thomas Whiteaker*
Kristina Thomas Whiteaker (State Bar No. 9434)
THE GRUBB LAW GROUP, PLLC
1114 Kanawha Boulevard, East
Charleston, WV 25301
304-345-3356 (telephone)
304-345-3355 (facsimile)